# Commonwealth v. Pava, Appellant.

*Criminal law—Murder—Evidence — Credibility — Cross-examination — Examination of prisoner as to another crime — Act of March 15, 1911, P. L. 20.*

1. A conviction of murder of the second degree will not be reversed because the district attorney asked the prisoner on cross-examination whether he had not been at a certain town "to look up some man," where the purpose of the question was to test the prisoner's credibility, he having testified, on direct examination, to

having been there and the question did not, under the circumstances, impute the commission of another offense, within the meaning of the Act of March 15, 1911, P. L. 20.

*Criminal law—Murder—Evidence—Admissions — Credibility — Interpreter—Competency of witness—Remark of district attorney —Caution by judge—Discretion—Abuse.*

2. Where a prisoner in a murder trial testifies in his own behalf, an official interpreter may testify to statements not in the nature of a confession, made by the prisoner while in jail, inconsistent with the testimony at the trial.

3. The official character of the interpreter does not affect his competency as a witness.

4. The admission of testimony of a witness not familiar with defendant's language as to admissions made by the prisoner in his presence through an interpreter, is not ground for reversal, where the testimony is merely a repetition of that of the interpreter himself, and identical with admissions testified to by officers as having been made by defendant, and spoken in English, when being taken to jail.

5. Testimony of witnesses as to voluntary statements made by the prisoner while being taken to the station house are admissible to contradict his testimony on the witness stand.

6. A remark of the district attorney that defendant had a witness in court whom he had failed to call, is not ground for reversal, where it appears that the trial judge promptly told the jury to disregard the remark.

*Practice, C. P.—Failure to request instructions—Appeal.*

7. A party may not remain silent and take chances on a verdict, and afterwards complain of matters, which, if erroneous, the court would have corrected.

*Criminal law—Murder—Degrees—Failure to charge as to degrees.*

8. The prisoner in a murder trial cannot complain that the court failed to define manslaughter, where there is nothing in the evidence to reduce the crime to manslaughter.

Argued October 5, 1920. Appeal, No. 139, Oct. T., 1920, by defendant, from judgment of O. & T. Beaver Co., March T., 1920, No. 5, on verdict of guilty of murder of the second degree, in case of Commonwealth v. Consarvia Pava. Before BROWN, C. J., STEWART,

MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEP-
HART, JJ.   Affirmed.

Indictment for murder.   Before BALDWIN, P. J.
The opinion of the Supreme Court states the facts.
Verdict of guilty of murder of the second degree, on
which sentence was passed.   Defendant appealed.

*Errors assigned* were various rulings and instructions
appearing by opinion of Supreme Court, quoting record.

*Richard S. Holt,* of *Holt, Holt & Richardson,* with him
*John B. McClure,* for appellant.

*A. P. Marshall,* with him *Louis E. Graham,* District
Attorney, *James L. Hogan* and *L. M. Sebring,* for ap-
pellee.

OPINION BY MR. JUSTICE FRAZER, December 31, 1920:
Defendant appeals from the judgment of the Court of
Oyer and Terminer of Beaver County entered on a ver-
dict of second degree murder.   There was no dispute as
to the manner in which the homicide was committed,
the defense being an alibi.   The evidence offered to sus-
tain such defense was submitted to the jury in a fair
and impartial charge of which no complaint is made and,
there being ample evidence to sustain the verdict, the
conviction must be sustained unless alleged errors in
the trial of the case call for a reversal.

The first assignment of error complains of the action
of the trial judge in permitting the district attorney to
ask defendant, on cross-examination, whether it was not
a fact "that your purpose in Ellwood City was the same
purpose you had in Midland [near which the murder
was committed], to look up some man," the contention
being that the question violated the provisions of the Act
of March 15, 1911, P. L. 20, which provides that a person
charged with crime "shall not be asked, and if asked

shall not be required to answer, any question tending to
show that he has committed, or been charged with, or
been convicted of, any offense other than the one where-
with he shall then be charged."

The question standing alone does not impute the com-
mission of a crime. Defendant, when arrested, was in
possession of a revolver and in reply to a question of his
counsel, on direct examination, stated he carried the
weapon "because someone had slashed the side of [his]
face once" while on his way home from work in Ellwood
City. Defendant's credibility as to the nature of the at-
tack upon him and the fact of his having worked in Ell-
wood City was thus opened to rebuttal and, while
the question as framed by the district attorney is on the
border line, we are not convinced it was not, under the
circumstances, proper cross-examination tending to re-
but defendant's evidence.

The second and third assignments allege error in per-
mitting the official interpreter to testify to statements
made to him by defendant on the occasion of a visit to
the Beaver County jail, without previous notice that the
interpreter would be used as a witness against him.
The purpose of the evidence was to attack the credi-
bility of defendant by contradicting his testimony given
at the trial. The statements of defendant were not a
confession of guilt, but mere statements of fact incon-
sistent with his present testimony and as such com-
petent to affect his credibility. The fact that the person
to whom they were made subsequently acted as inter-
preter on the trial of defendant does not affect his com-
petency as a witness: Chicago & Alton R. R. v. Shenk,
131 Ill. 283; Barber Asphalt Paving Co. v. Odasz, 85
Fed. 754.

The fourth and fifth assignments complain of the
action of the trial judge in permitting a witness to tes-
tify to admissions made in his presence by defendant
through an interpreter. As the witness was not familiar
with defendant's language and depended solely upon the

interpreter, appellant contends his testimony was only hearsay and should not have been received. However, as the testimony was mere repetition of that of the interpreter himself and identical with admissions testified to by the officers as having been made by defendant, and spoken in English, when being taken to jail, its admission, under the circumstances, cannot be said to be sufficient cause for a reversal: Wolverton v. Com., 7 S. & R. 273; Shultz v. Seibel, 209 Pa. 27.

Assignments six to eleven, inclusive, and also the twenty-first, cannot be sustained. They complain of the admission of testimony of witnesses as to voluntary statements made by defendant while being taken to the station house on the night of his arrest. Such statements were clearly competent to contradict his testimony on the witness stand.

The twelfth assignment specified the action of the trial judge in refusing to withdraw a juror, asked because counsel for the Commonwealth in his address said the defense had a witness in court whom they failed to call, of which there was no testimony on the record. The trial judge promptly instructed the jury to disregard the remark and we see no basis for the claim that in refusing defendant's request he abused his discretion: Thompson v. Stevens, 71 Pa. 161; Cook v. Motor Co., 225 Pa. 91.

Assignments thirteen to sixteen, inclusive are so clearly without merit as to require no discussion. The seventeenth assignment complains of the statement of the trial judge that a named witness positively identified defendant as one who did the shooting, the witness having merely stated defendant "looks like him." The trial judge subsequently quoted the exact language of the witness and later instructed the jury as follows: "I have endeavored to state the positions and the contentions of the various parties, so if I have omitted any of the evidence I will say to you that you are expected to remember it and give it the consideration which you

think it deserves. Or, if the court has misstated any of the evidence, you will correct the court. You are the final repositories of the evidence and are expected to remember it all and as best you can to remember it accurately. It is your province to correct the court or the counsel if any of us have mistakenly stated the evidence to you." At the close of the charge counsel were asked "is there anything I have omitted?" and while defendant's counsel requested additional instructions in several matters and also requested that other instructions be either modified or extended, no reference was made to the complaint embraced in this assignment. It was the duty of counsel at that time to call attention to the error in referring to the testimony of the witness, if a correction was desired in view of the court having subsequently accurately quoted his language. This was not done. A party may not remain silent and take chances on a verdict and afterwards complain of matters which, if erroneous, the court would have corrected: Com. v. Razmus, 210 Pa. 609. What is said above also applies to the eighteenth assignment.

The nineteenth and twentieth assignments complain that the trial judge failed to define manslaughter. But since under the evidence there was nothing to reduce the crime to manslaughter and the only question was whether defendant was a participant in committing the offense, such definition was unnecessary: Com. v. Gibson, 211 Pa. 546; Com. v. Le Grange, 227 Pa. 368; Com. v. Morrison, 266 Pa. 223.

The twenty-second and twenty-third assignments are to the action of the court in refusing a new trial and entering judgment on the verdict. In view of the disposition of the other assignments these need no comment.

The judgment is affirmed.